Filed 3/11/15  Redlich v. Reliance Management Group CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANNA-BECKY REDLICH,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>RELIANCE MANAGEMENT GROUP, INC. et al.,<br><br>　　　Defendants and Appellants. | A140313<br><br>(San Mateo County<br>Super. Ct. No. CIV523788) |

Defendants Reliance Management Group, Inc. (Reliance) and Vox Design Group (Vox) appeal from the denial of petitions to arbitrate.  We agree with the trial court that the arbitration provisions in their contracts with plaintiff Anna-Becky Redlich did not sufficiently comply with Business and Professions Code section 7191,[1] which regulates such provisions in contracts for work on small residential properties.

**BACKGROUND**

Redlich contracted with Vox, a design firm, and Reliance, a construction management firm, to renovate a Hillsborough, California residence.

Paragraph 15 of the Vox contract, in the same font as used in most of the rest of the contract, reads:

> "15.  Arbitration. Any controversy relating to the Contract shall be submitted to and settled by binding arbitration in accordance with rules of American Arbitration Association. Arbitrator shall have a minimum of eight years of

---

[1] All further statutory references are to the Business and Professions Code unless indicated.

practical design or construction experience. Legal or forensic experience shall not be considered practical construction experience. A hearing on the matter to be arbitrated shall take place in the State and County where the Parties signed the Contract or in a mutually agreeable location. . . . . If a demand for arbitration is tendered by either party to the Contract, the demanding party will prepare and deliver to the other Party or Parties the following: a complete list of alleged claims, all expert reports, all costs to recover, and all supporting documentation no later than sixty (60) days prior to the date of arbitration. Failure to provide the above documentation in a timely way shall waive right to recovery of damages or other claims. . . ."

The paragraph also states damages in any dispute are limited to the price of the contract and disputes for amounts at or beneath the threshold for small claims court may be litigated in that forum at the request of either party.

Beneath paragraph 15 appears a block of text in bold, capital letters. There is a heading, "ARBITRATION OF DISPUTES," and a "NOTICE" follows which is taken nearly verbatim from section 7191, subdivision (b). They read:

"ARBITRATION OF DISPUTES.
NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE OR OTHER APPLICABLE LAWS. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION." (Compare § 7191, subd. (b) [in which "BUSINESS AND PROFESSIONS CODE OR OTHER APPLICABLE LAWS" is substituted for "CALIFORNIA CODE OF CIVIL PROCEDURE"].)

2

After this text, there is a space for both Vox and the client to initial their consent.

Paragraph 16 of the Reliance contract, in the standard font used in the rest of the agreement, reads:

> "16.  Arbitration.  Any controversy relating to the Contract shall be submitted to and settled by binding arbitration in accordance with the terms of the Contract Documents."

Beneath this paragraph is the same heading and section 7191 language (this time referring to the Business and Professions Code), all in boldface capitals, similar to the Vox agreement.  Thereafter there is a space for both Reliance and the client to initial.

Included in the Reliance contract papers is an unsigned, 10-page document entitled "General Conditions."  On page nine, a paragraph 16.15 appears, and, in a standard, un-emphasized font reads:

> "16.15  Arbitration.  The following terms shall be used by each party in the settlement of any dispute by arbitration unless mutually waived.  Arbitrator shall have a minimum of eight years of practical construction experience.  Legal or forensic experience shall not be considered practical construction experience.  A hearing on the matter to be arbitrated shall take place in the State and County where the Parties signed the Contract. . . . Claims shall be heard in accordance with the rules of the American Arbitration Association, but may be arbitrated by any mutually agreeable arbitrator meeting the requirements herein. . . . If a demand for arbitration is tendered by either party to the Contract, the demanding party will prepare and deliver to the other Party or Parties the following: a complete list of alleged claims, all expert reports, all costs to recover, and all supporting documentation no later than sixty (60) days prior to the date of arbitration.  Failure to provide the above documentation in a timely way shall waive right to recovery of damages or other claims. . . ."

Paragraph 16.15 of the General Conditions also contains the damages limitation and small claims court term as Paragraph 15 of the Vox contract.

The renovation project did not end amicably.  Redlich sued Vox and Reliance in San Mateo County Superior Court for approximately $75,000 in damages related to alleged retention of deposits and unjustified overcharges. [2]

---

[2]  Apparently, Redlich also sued the owner of Vox and Reliance in Santa Clara Superior Court.  In that case, Vox and Reliance successfully invoked what seem to be the

3

Vox and Reliance, citing the various contract terms just described, petitioned to compel arbitration. Redlich opposed arbitration, asserting the arbitration provisions did not comply with section 7191's requirements, the provisions were unconscionable, and the agreements to arbitrate was obtained by fraud.

The trial court denied the petitions for lack of compliance with section 7191, subdivision (a). In particular, the court noted portions of the arbitration provisions were not in boldface type and the mandated title "ARBITRATION OF DISPUTE" was misplaced. The trial court did not address Redlich's other objections to arbitration.

### DISCUSSION

As framed by the parties' briefs on appeal, the only issue is whether the arbitration provisions sufficiently comply with section 7191. Our interpretation of section 7191 and "our determination of its applicability to the undisputed facts in this case are questions of law subject to our independent review." (*Medeiros v. Superior Court* (2007) 146 Cal.App.4th 1008, 1014.)

California law favors arbitration, but also recognizes waiver of a judicial forum is no slight matter. (*Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 205 (*Woolls*).) Accordingly, the Legislature has acted to regulate the use of arbitration clauses in certain types of contracts. (*Id.* at p. 205.) In these contracts, an arbitration clause must contain specified language and/or adhere to a particular format so the clause is prominent and readily understood. (*Ibid.*)[3]

---

same contracts at issue here to compel arbitration, although the superior court deemed several terms in the arbitration clauses to be unenforceable. Vox and Reliance ask us to take judicial notice of the March 2014 superior court order compelling arbitration. We deny the request. That superior court order does not establish any relevant fact and is not authority for any proposition of law (aside from not being precedential, the order does not even contain legal analysis, but simply orders an outcome). (See *Party City Corp. v. Superior Court* (2008) 169 Cal.App.4th 497, 507 [refusing to take judicial notice of superior court orders in similar cases], disapproved on another ground by *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 534.)

[3] If a dispute involves interstate commerce and implicates federal arbitration law, such California laws limiting arbitration are generally preempted. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 250,

4

Section 7191 regulates arbitration clauses in contracts "for work on residential property with four or fewer units." (§ 7191, subd. (a); see also Code Civ. Proc., §§ 1295 [contract for medical services and arbitration of malpractice claim]; 1298 [certain real estate contracts]; Health & Saf. Code, §§ 1363.1 [health care service plan]; 1599.81 [admission contracts for long term health care]; Ins. Code, § 10123.19 [disability insurance policies].)

Under section 7191, an arbitration provision must be "clearly titled 'ARBITRATION OF DISPUTES'." (§ 7191, subd. (a).) In a printed contract, the provision "shall be set out in at least 10-point roman boldface type or in contrasting red print in at least 8-point roman boldface type." (*Ibid.*) If the provision is included in a typed contract, it shall be set out in "capital letters." (*Ibid.*)

Section 7191 further specifies that immediately following the arbitration provision, and immediately before a space for the parties to indicate assent or disagreement to it, a "NOTICE" must appear, as referenced above in the background section. (§ 7191, subd. (b).) The "NOTICE" explicitly refers back to the "ARBITRATION OF DISPUTES" provision, which is presumed to have spelled out the matters subject to and other terms of arbitration. (*Ibid.*) The "NOTICE" also alerts consumers they are giving up any right they might possess to have a court or jury trial, and may be giving up the right to discovery and appeal. (*Ibid.*) As with the "ARBITRATION OF DISPUTES" provision, the "NOTICE," if "in a printed contract, shall be set out either in at least 10-point roman boldface type or in contrasting red print in at least 8-point roman boldface type, and if . . . in a typed contract, it shall be set out in capital letters." (*Ibid.*)

When the arbitration provisions in a contract governed by section 7191 fail to comply with the statutory requirements, they generally "may not be enforceable against any person other than the licensee" providing the work. (§ 7191, subd. (c).) This means noncompliant arbitration provisions "cannot be enforced against any person other than

fn.15; *Woolls*, *supra*, 127 Cal.App.4th at pp. 211–213.) However, preemption is not argued here. (See *Woolls*, at p. 213.)

the licensee." (*Woolls*, *supra*, 127 Cal.App.4th at p. 210 [it legislates an outright, nondiscretionary bar to enforcement].)

There is no question the arbitration provisions in Redlich's contracts with Vox and Reliance do not comply with section 7191's requirements. True, both contracts essentially include the capitalized "NOTICE" text mandated by subdivision (b), but the Vox contract's provision references the Code of Civil Procedure, not the Business and Professions Code (the code reference the subdivision requires). Meanwhile, neither contract uses bold, colored, or capitalized text for the other arbitration provisions. These terms, defining what claims must be arbitrated and in what manner, are located in paragraph 15 of the Vox contract and paragraphs 16 and 16.15 of the Reliance contract and General Conditions. While paragraph 15 of the Vox contract and paragraph 16 of the Reliance contract are located just above the "NOTICE," paragraph 16.15 of the Reliance General Conditions, which contains the lion's share of that contract's arbitration terms, is located in a separate document. These paragraphs not only lack the proper formatting for emphasis, they are not properly titled "ARBITRATION OF DISPUTES" as required by subdivision (a). Instead, they begin with the word "Arbitration" in a font that appears indistinguishable from that of surrounding text.[4] The title "ARBITRATION OF DISPUTES" is erroneously placed just before the "NOTICE." Thus, when the "NOTICE" refers to the "ARBITRATION OF DISPUTES" provision, it confusingly appears to refer to the notice itself or nothing at all.

Given these variances from the statutory requirements, Vox and Reliance do not claim literal compliance with section 7191, but contend they substantially complied with the statute, and so arbitration should be ordered.

"The rules governing the doctrine of substantial compliance are well settled. [Citation.] As it is used in the decisions of this state, the doctrine excuses literal

---

[4] Vox and Reliance assert the word "Arbitration" at the start of these paragraphs appears in boldface type. We see no such emphasis in the copy of the contracts in the appellate record. Even if the word were emphasized in bold, that would not change our conclusion. Whatever formatting the word has, it is no different from the formatting similar words have at the start of the other numbered paragraphs in these contracts.

6

noncompliance only when there has been 'actual compliance in respect to the substance essential to every reasonable objective of the statute.' " (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1430 (*Robertson*).) " ' "Where there is compliance as to all matters of substance[,] technical deviations are not to be given the stature of noncompliance. [Citation.] Substance prevails over form." ' " (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 72 (*Malek*).) However, the doctrine "does not allow for an excuse to literal noncompliance in every situation." (*Robertson*, *supra*, at p. 1430; see generally *Costa v. Superior Court* (2006) 37 Cal.4th 986, 1024, 1027–1030 (*Costa*) [substantial compliance with statute requiring submission of proposed ballot measure to Attorney General for preparation of official title and summary prior to circulation: version submitted and version circulated had some relatively minor substantive differences, but summary and title would be identical for each version so statute's objective, to inform public, met].)

"[T]here is some doubt whether" statutes regulating arbitration clauses, like section 7191, whose provisions in fact demand a degree of technical compliance, "permit[] mere substantial compliance." (*Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 166 (*Zembsch*).) But courts have not ruled out the doctrine's application in an appropriate case. (*Ibid.*) Indeed, it would arguably be inequitable to deny effect to an arbitration provision because of an omission of an immaterial word or punctuation mark, or a trivial variance in the emphasis used to bring prominence to the provision, if made inadvertently and in good faith. (See *Costa*, *supra*, 37 Cal.4th at pp. 1027–1030.) The Vox and Reliance arbitration provisions, however, suffer from different sorts of defects. So even if substantial compliance is available to save statutorily regulated arbitration provisions in the right case, this is not that case.

The first step in a substantial compliance analysis is examining the objectives of the statute at issue, here, section 7191. (*Zembsch*, *supra*, 146 Cal.App.4th at p. 166.) Section 7191 has been less often discussed then the other statutes regulating arbitration provisions, but we can glean the section's objectives from its text and from cases interpreting the other statutes.

7

As already set forth, section 7191 mandates that arbitration provisions be presented to the consumer with emphasis (with a title, and in an emphasized font), be paired with and spatially adjacent to a specified "notice" (in the same emphasized font), and contain a space for the consumer to specially consent by initialing. (§ 7191, subds. (a)–(b).)

This makes section 7191 similar to Health and Safety Code section 1363.1,[5] regulating arbitration provisions in health care service plans. This latter statute lacks the detailed font size requirements of section 7191 and does not mention initialing, but it does mandate that an arbitration provision be "prominently displayed," appear in a separate article in the contract, appear just above the contract signature line, and clearly state the extent of any jury trial waiver in language akin to that in Code of Civil

---

[5] Health and Safety Code section 1363.1 provides:

"Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions:

"(a) The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including specifically whether the plan uses binding arbitration to settle claims of medical malpractice.

"(b) The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee.

"(c) The disclosure shall clearly state whether the subscriber or enrollee is waiving his or her right to a jury trial for medical malpractice, other disputes relating to the delivery of service under the plan, or both, and shall be substantially expressed in the wording provided in subdivision (a) of Section 1295 of the Code of Civil Procedure.

"(d) In any contract or enrollment agreement for a health care service plan, the disclosure required by this section shall be displayed immediately before the signature line provided for the representative of the group contracting with a health care service plan and immediately before the signature line provided for the individual enrolling in the health care service plan."
(Health & Saf. Code, § 1363.1.)

8

Procedure section 1295, subdivision (a).[6]  Thus, Health and Safety Code section 1363.1, like section 7191, can be described as having two broad objectives:  to disclose the arbitration requirement and to ensure a knowing waiver of the judicial forum and its associated rights.  (See *Malek*, *supra*, 121 Cal.App.4th at p. 72 [Health and Safety Code "section 1363.1 is not just a notice statute.  The purpose of section 1363.1 is to disclose the requirement to arbitrate *and* to ensure a knowing waiver of the right to a jury trial."].)

Key to implementing these disclosure and knowing waiver objectives in both sections are the placement and prominence requirements, each of which are, themselves, "essential to achieving the legislative purpose."  (See *Burks v. Kaiser Foundation Health Plan, Inc.* (2008) 160 Cal.App.4th 1021, 1029 (*Burks*) [Health and Safety Code section 1363.1 contains prominence and placement requirements, and each must be met to satisfy the statute].)  While section 7191 may address placement and prominence in somewhat different ways than Health and Safety Code section 1363.1—for instance, section 7191 requires certain fonts, not mere prominence—the goals are shared nonetheless.

Courts have breathed life into the prominence and placement requirements by refusing to enforce arbitration provisions as not substantially compliant if falling short of even one of these goals.  For instance, in *Malek*, *supra*, 121 Cal.App.4th 44, 73, the arbitration provision in an insurer's enrollment form did not appear directly above or before the signature block as required by Health and Safety Code section 1363.1.  "This

---

[6]  Code of Civil Procedure section 1295, subdivision (a) provides:  "Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language:  'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings.  Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.' "  (Code Civ. Proc., § 1295, subd. (a).)

placement is not a technical defect of form because it leaves in doubt whether the Maleks knowingly waived their right to a jury trial.  Under these circumstances, the statutory objectives of section 1363.1 have not been met." (*Malek*, at p. 73.)  The "prominence requirement (like the placement requirement) is essential to achieving the legislative purpose, and therefore anything less than *actual* compliance with the prominence requirement is unacceptable." (*Burks, supra*, 160 Cal.App.4th at p. 1029.)  Moreover, the prominence requirement is viewed separately and in addition to the placement requirement.  (*Id*. at p. 1028 [placement of clause near signature block does not relate to it being prominently displayed].)  "An enrollment form that does not have the required arbitration disclosure prominently displayed on it—in direct contravention of subdivision (b) of section 1363.1—does not substantially comply with that statute." (*Id.* at p. 1029; see also *Zembsch*, *supra*, 146 Cal.App.4th at pp. 166–167 ["the failure of Health Net to display its disclosure with the prominence required by the statute casts doubt on whether Zembsch knowingly waived his rights"]; *Robertson, supra,* 132 Cal.App.4th at p. 1431.)

Thus, appellate courts have rejected substantial compliance arguments when the required disclosure was "in the same font as the preceding paragraph, . . . 'not bolded, underlined or italicized' " (*Zembsch*, *supra*, 146 Cal.App.4th at p. 165), did not stand out from the remainder of the form (*Burks*, *supra*, 160 Cal.App.4th at pp. 1024–1025), or was "in the same typeface as the rest of the document with only its two word title in bolded print" (*Robertson, supra,* 132 Cal.App.4th at p. 1431).

Turning to the defects in the arbitration provisions here, they suffer from shortcomings similar to those in the cases just discussed.

To start, the arbitration provisions in the Vox and Reliance contracts have no prominence whatsoever.  While the "NOTICE" explaining the consequences of arbitration appears in capital letters in both contracts, the "NOTICE" is *not* the arbitration provision.  Indeed, the "NOTICE," itself, expressly refers to the separate "ARBITRATION OF DISPUTES" provision, and section 7191 separately requires an "ARBITRATION OF DISPUTES" provision in emphasized format *and* a similarly-formatted "NOTICE."  (§ 7191, subds. (a)–(b).)  In the context of Code of Civil

10

Procedure section 1298, which also requires an emphasized arbitration provision and an similarly-worded "notice" in certain real estate contracts (Code Civ. Proc., § 1298, subds. (a), (c)), it has been held the mandatory "NOTICE" is *not* an enforceable agreement to arbitrate, but instead explains the consequences of agreeing to arbitrate. It is merely "an *accompaniment* to an arbitration provision." (*Villacreses v. Molinari* (2005) 132 Cal.App.4th 1223, 1231–1233 (*Villacreses*).)

Looking at the actual arbitration provision in the Vox and Reliance contracts (paragraph 15 in the Vox contract and paragraphs 16 and 16.15 in the Reliance contract and General Conditions), they are not properly titled "ARBITRATION OF DISPUTES," but rather are presented in text indistinguishable from that used in the remainder of the contracts. The text is not bolded or colored or capitalized, as required by section 7191, subdivision (a). Nor is it made prominent in any other way. Vox and Reliance claim the text in these various un-emphasized paragraph is merely "incidental" procedural matter. It is not. These paragraphs contain the core arbitration provisions, defining what would be arbitrated and how. Section 7191 requires them to be prominent, and Vox and Reliance did not substantially comply.

Furthermore, there are serious placement issues. In the Reliance contract, the required "NOTICE" regarding the consequences of arbitration and the actual arbitration provisions are not even located in the same document—the majority of the arbitration provisions are in the separate General Conditions—flagrantly (and not technically) violating section 7191, subdivision (b)'s requirement that the "NOTICE" appear "immediately following [the] arbitration provision." Also, in both the Vox and Reliance contracts, the title "ARBITRATION OF DISPUTES" does not, as required by subdivision (a), introduce the arbitration provision but rather precedes the generic "NOTICE," thus creating confusion about what the "NOTICE" even applies to. (Cf. *Villacreses*, *supra*, 132 Cal.App.4th at pp. 1231–1233 ["NOTICE" refers back to arbitration provision, and without such a provision, there is no agreement to arbitrate].)

11

We therefore conclude, as did the trial court, the Vox and Reliance arbitration provisions cannot be said to substantially comply with section 7191 and, as a result, cannot be enforced.

## DISPOSITION

The order denying arbitration is affirmed.

_____
Banke, J.

We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.